# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY MAMMANA, | No. 4:17-CV-00645 |
| Plaintiff, | (Judge Brann) |
| v. | |
| LIEUTENANT BARBEN, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### JUNE 25, 2020

**I.    BACKGROUND**

Anthony Mammana, a federal inmate previously confined at the Allenwood Federal Correctional Institution ("Allenwood FCI"), filed a civil rights complaint—which he later amended—alleging that numerous defendants violated his Constitutional rights.[1] In August 2018, this Court determined that Mammana failed to state an Eighth Amendment conditions of confinement claim and dismissed his complaint.[2]

Mammana thereafter filed an appeal with the United States Court of Appeals for the Third Circuit.[3] On appeal the Third Circuit considered the "sole issue in this appeal[—]whether Mammana's allegations regarding the conditions of his

---

[1] Docs. 1, 22.
[2] Docs. 28, 30, 31.
[3] Doc. 32.

confinement satisfy the first prong under the Eighth Amendment—an objective deprivation of sufficient seriousness."[4] That court determined that Mammana's allegation "that he was deprived of his clothing, provided only 'paper like' coverings instead, denied bedding, and exposed to low cell temperatures and constant bright lighting for four days" was sufficient to state a claim for "the denial of the minimal civilized measure of life's necessities, in particular, warmth and sufficient sleep."[5] Accordingly, the Third Circuit remanded the matter to this Court for further proceedings.[6]

On remand, Mammana filed a second amended complaint,[7] which this Court again construes as a *Bivens*[8] complaint, given the involvement of federal officials in the underlying events. In that complaint, he alleges that he was transferred to administrative segregation, where he refused a cellmate whom he asserts was "well-known for his deviate sexual behavior forced onto cellmates."[9] Due to this refusal, Mammana was placed in a "special cell" known as the Yellow Room.[10] The Yellow Room "has bright, yellow walls that intensifies the light therein and is kept at a cold temperature. It also contains an extremely thin mattress on a metal bed frame."[11]

---

[4]  *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019).
[5]  *Id.* at 375 (internal quotation marks omitted).
[6]  *Id.*
[7]  Doc. 40.
[8]  *Bivens v. Six Unknown Named Agents of Fed, Bureau of Narcotics*, 403 U.S. 388 (1971).
[9]  *Id.* at 4.
[10] *Id.*
[11] *Id.*

Mammana "was forced to remove his prison-issued clothing and wear only a paper-weight clothing which was see-through thin; [he] was not be given any blankets or sheets; [and] the bright lights in the 'Yellow Room' [were] kept on twenty-four hours a day" for four days.[12] The combined effect of these conditions deprived Mammana of warmth and sleep: he "barely slept[and d]uring the few, short instances of sleep, [he] woke up shivering."[13] Mammana further alleges that, while he "was provided three meals each day . . . [he] was only provided the food for about twenty minutes. On most occasions, the correctional guards . . . took Plaintiff's food plate back before Plaintiff was able to finish eating, depriving Plaintiff of hundreds of calories during each meal."[14] Mammana alleges that those conditions violated his Eighth Amendment right against cruel and unusual punishment by depriving him of warmth, sleep, and adequate food.[15]

Defendant Lieutenant Barben[16] has filed a motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), in which he asserts that Mammana's claim related to inadequate food is insufficient to state a claim for relief and, in any event, all of Mammana's claims would extend *Bivens* to new contexts, which is not

---

[12]   *Id.* at 4-5.
[13]   *Id.* at 5.
[14]   *Id.*
[15]   *Id.* at 7-9. Mammana also raised an Eighth Amendment claim related to a lack of exercise (*id.* at 8), but has since withdrawn that claim. (Doc. 45-1 at 20).
[16]   Barben notes that the unnamed John Doe Defendants should be dismissed based upon Mammana's failure to identify those individuals. (Doc. 44 at 8 n.1).

permissible in these circumstances.[17] Without directly addressing Barben's argument, Mammana asserts that the Third Circuit has already concluded that he adequately stated an Eighth Amendment claim related to the deprivation of warmth and sleep, and that he has adequately stated a claim for a deprivation of food.[18] This matter is now ripe for disposition and, for the following reasons, Barben's motion will be granted.

## II.  DISCUSSION

"A motion for judgment on the pleadings will be granted, pursuant to Fed. R. Civ. P. 12(c), if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law."[19] "The court will accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements."[20] In reaching a determination, courts should draw "all reasonable inferences" from the allegations and "may also consider documents attached to the complaint."[21]

The United States Supreme Court has recognized "an implied cause of action" for damages against federal officials who violate an individual's constitutional rights in what is known as a *Bivens* action.[22] However, the Supreme Court has explicitly

---

[17]  Doc. 44.
[18]  Doc. 45.
[19]  *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262 (3d Cir. 2008).
[20]  *Id.* at 262-63.
[21]  *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011).
[22]  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).

permitted *Bivens* actions for only three constitutional violations: (1) the "Fourth Amendment's right against unreasonable searches and seizures"; (2) "the Fifth Amendment's Due Process Clause for gender discrimination in the employment context"; and (3), "the Eighth Amendment's Cruel and Unusual Punishments Clause for inadequate prison medical care."[23] The Supreme Court "has consistently refused to extend *Bivens* to any new context or new category of defendants" for more than thirty years, and "has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity."[24]

Accordingly, the Supreme Court has "established a rigorous inquiry to determine whether a *Bivens* cause of action should be recognized in a new context."[25] "First, courts must determine whether a case presents 'a new *Bivens* context,' by asking whether or not the case 'is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court.'"[26]

> Examples of potentially meaningful differences include "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; and the risk of disruptive intrusion by the Judiciary into the functioning of other branches."[27]

---

[23] *Bistrian v. Levi*, 912 F.3d 79, 89 (3d Cir. 2018).
[24] *Abbasi*, 137 S. Ct. at 1857 (internal quotation marks omitted).
[25] *Bistrian*, 912 F.3d at 89 (internal quotation marks omitted).
[26] *Id.* at 89-90 (quoting *Abbasi*, 137 S. Ct. at 1859 (brackets omitted)).
[27] *Id.* at 90 (quoting *Abbasi*, 137 S. Ct. at 1860 (brackets omitted)).

"If the case does present an extension of *Bivens* into a new context, [courts] turn to the second step of *Abbasi* and ask whether any 'special factors counsel hesitation' in permitting the extension."[28] "There may be many such factors, but two are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles."[29] "The first factor—whether an alternative remedial structure is available—may by itself 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'"[30] "And any time the second factor—separation-of-powers principles—is in play, that 'should be central to the analysis.'"[31]

> The [Supreme] Court noted other special factors that could be considered, including: the potential cost to the government of recognizing a private cause of action, both financially and administratively; whether the judiciary is well suited to weigh those costs; the necessity to deter future violations; whether Congress has already acted in that arena, suggesting it does not "want the Judiciary to interfere"; whether a claim addresses individual conduct or a broader policy question; whether litigation would intrude on the function of other branches of government; and whether national security is at stake.[32]

Here, Mammana seeks to recover under an Eighth Amendment conditions of confinement claim,[33] and such a claim falls outside of the three categories of *Bivens* claims that have been allowed by the Supreme Court.[34] While the Supreme Court

---

[28] *Id.* (quoting *Abbasi*, 137 S. Ct. at 1857).
[29] *Id.*
[30] *Id.* (quoting *Abbasi*, 137 S. Ct. at 1858).
[31] *Id.* (quoting *Abbasi*, 137 S. Ct. at 1857).
[32] *Id.* (quoting *Abbasi*, 137 S. Ct. at 1856-63).
[33] Doc. 40 at 7-9.
[34] *See Bistrian*, 912 F.3d at 89 (listing three areas where *Bivens* claims have been allowed by the Supreme Court).

has permitted Eighth Amendment claims to proceed for allegations of inadequate medical treatment, such a claim is materially different than one related to conditions of confinement.[35] It is true that both claims address whether a prisoner has been subjected to cruel and unusual punishment and both require a sufficiently culpable state of mind, but one also requires an element that the other does not—a serious medical need. This renders the claims materially different—even if only in a modest way—and, as the Supreme Court has emphasized, "even a modest extension [of *Bivens*] is still an extension."[36] Because an Eighth Amendment conditions of confinement claim is "meaningfully different from" an Eighth Amendment inadequate medical care claim,[37] this Court must examine whether any special factors counsel against extending *Bivens* to this context.

As to the first of the most "weighty" considerations, it does not appear that Mammana has any alternate remedies available. Given the isolated nature of this incident, and the fact that Mammana is no longer incarcerated at FCI Allenwood, his claim is "difficult to address except by way of damages actions after the fact," which cannot be accomplished through the administrative grievance process or a habeas

---

[35] *Compare Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (for conditions of confinement claim "(1) the deprivation alleged must be, objectively, sufficiently serious, and (2) the prison official must have a sufficiently culpable state of mind"), *with Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (for inadequate medical care "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need").
[36] *Abbasi*, 137 S. Ct. at 1864.
[37] *Lee v. Janosko*, No. 2:18-CV-01297, 2019 WL 2392661, at *5 (W.D. Pa. June 6, 2019).

petition.[38] Despite this, "the absence of an alternative" remedy is not dispositive, and the Court must still examine whether other considerations weigh against creating a new *Bivens* action.[39]

Three factors counsel against extending *Bivens* to cover a conditions of confinement claim. First, with respect to the separation of powers consideration, the Supreme Court has noted that Congressional inaction in the area of prisoner litigation suggests "that Congress does not want a damages remedy."[40] The Supreme Court explained:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to *Bivens* suits. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.[41]

Second, creating a new *Bivens* remedy related to conditions of confinement would unnecessarily involve the courts in matters of prison administration, matters that "cannot be helpfully reviewed as *Bivens* claims[, as] '[c]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform'

---

[38] *Bistrian*, 912 F.3d at 92 (quoting *Abbasi*, 137 S. Ct. at 1862).
[39] *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).
[40] *Abbasi*, 137 S. Ct. at 1865.
[41] *Id. See also Lee*, 2019 WL 2392661, at *6 ("Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim").

because the problems 'are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.'"[42] Claims related to how thick a mattress should be, what color cell walls should be painted, and what temperature the air conditioning should be set at are all issues that "implicate[] matters of prison administration that counsel against recognition of a *Bivens* claim."[43]

Finally, permitting a *Bivens* action related to conditions of confinement would necessarily entail significant "time and administrative costs attendant upon intrusions resulting from the discovery and trial process," which militates against permitting such an extension.[44] In his second amended complaint, Mammana challenges, *inter alia*, the warmth of the clothing provided to him, the thickness of the mattress and frame of the bed in the cell, the temperature of the cell, the brightness of the lights and the duration of their illumination, the color of the walls, and the amount of time that he was provided to eat his meals.[45]

Regardless of the relative merits of Mammana's case, permitting *Bivens* claims under these circumstances would engender significant—and difficult to resolve—litigation regarding prison conditions.[46] Courts and prisons would be

---

[42] *Bistrian*, 912 F.3d at 94 (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)).
[43] *Jones v. Sposato*, 783 F. App'x 214, 218 n.4 (3d Cir. 2019).
[44] *Abbasi*, 137 S. Ct. at 1856.
[45] Doc. 40 at 7-8.
[46] Mammana contends that the question of whether a *Bivens* claim may proceed was answered by the Third Circuit on appeal. However, the Third Circuit addressed only whether Mammana adequately stated an Eighth Amendment claim and did not address whether such a claim is cognizable in a *Bivens* action. *See Mammana*, 934 F.3d at 373 (noting that the "sole issue in this appeal is whether Mammana's allegations regarding the conditions of his confinement satisfy the first prong under the Eighth Amendment—an objective deprivation of sufficient

forced to consistently grapple with questions of whether an inmate's mattress is unconstitutionally thin, what temperature the air conditioning or heat must be set at, or what color walls are permissible. One prisoner may file suit alleging that the air conditioning is too cold during the summer, while another inmate in the same facility may file suit alleging that the air conditioning is not cool enough. Sifting through such claims could overwhelm prisons and courts alike. This constitutes a special factor that gives this Court pause in expanding *Bivens* to encompass Mammana's claims.

### III. CONCLUSION

The Court concludes that Mammana's claims expand the *Bivens* remedy to a new context, and that special factors counsel against such expansion. Consequently, the Court will grant Barben's motion and enter judgment in favor of Defendants.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

seriousness"). There is an obvious distinction between whether a plaintiff has adequately alleged a claim, and whether he has adequately alleged a cognizable cause of action.